242 So.2d 358 (1970)
VALLEY LAND CORPORATION, Plaintiff-Appellant,
v.
Garland FIELDER, Defendant-Appellee.
No. 11537.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1970.
Rehearing Denied January 11, 1971.
Writ Refused February 24, 1971.
*359 Maynard E. Cush, Shreveport, and Ford E. Stinson, Benton by Maynard E. Cush, Shreveport, for appellant.
Love, Rigby, Dehan & Love by Kenneth Rigby, Shreveport, for appellee.
Before BOLIN, PRICE and HEARD, JJ.
En Banc. Rehearing Denied January 11, 1971.
BOLIN, Judge.
Plaintiff sued defendant seeking to have plaintiff's right of redemption recognized as to property conveyed from plaintiff to defendant. Alternatively, plaintiff sought to have the sale set aside for lesion beyond moiety. From judgment rejecting plaintiff's demands it appeals.
By deed dated April 21, 1965, Valley Land Corporation conveyed to Garland Fielder property in Caddo Parish, Louisiana, with the vendor reserving the right to redeem the property within one year by paying to the vendee the entire purchase pirce of $45,000 plus 6% interest from date until paid.
On April 25, 1966, the parties to the original deed executed a written instrument, and in connection therewith Valley Land paid to Fielder $17,700 representing $15,000 to be applied to the redemption price of the property and $2,700 to be applied to interest. By this same agreement Valley Land was granted until April 21, 1967, the right to redeem the property "upon giving written notice to the said Fielder on or before April 21, 1967", and upon the payment of the remaining $30,000 of the original purchase price together with interest and itemized incidental costs. The instrument also provided Valley Land was granted the right to re-extend the redemptive period for an additional year, or until April 21, 1968, upon Valley Land's "giving written notice of its desire to extend the said redemptive period to the said Fielder on or before April 21, 1967", and upon following the terms previously set forth in the instrument.
Valley Land and Fielder entered into another written agreement on April 21, 1967, which in essence reaffirmed by a separate instrument the extension of the right of redemption contained in the first extension agreement. Fielder acknowledged receipt of the sum of $2,400 as interest from the date of the deed for which Valley Land was granted the right to redeem the property on or before April 21, 1968 "upon giving written notice to the said Fielder on or before April 21, 1968, and upon payment to him of the sum of $30,000, together with 8% per annum interest from this date until paid". This same extension agreement granted Valley Land the right to re-extend the redemptive period for one additional year (until April, 1969) by giving written notice to Fielder before April 21, 1968, and by paying $15,000 on the redemptive price plus $3,730.53 for interest, taxes, etc.
Valley Land instituted the present action on April 18, 1969, alleging that on April 15, 1968, it had tendered a check to Valley Land for $2,400 representing interest, and $3,000 to be applied to the principal, "it being understood by and between the parties that an additional one year extension would be granted". Plaintiff further alleged it had attempted to locate defendant on various occasions up to and through April 21, 1968, without avail, and upon information and belief alleged defendant was deliberately absenting himself in order to defeat plaintiff's right of redemption of the property. Plaintiff further sought to have the court recognize its right to redeem the property upon payment to the defendant of the remaining $30,000 due, plus interest, costs, etc.
Valley Land alternatively sought to have the sale set aside on the grounds of lesion beyond moiety. As a basis for this demand, *360 Valley Land claims the purchase price should be fixed at $30,000, being the unpaid balance due on the purchase price, rather than the original purchase price of $45,000.
The case went to trial on the above issues. Valley Land never gave Fielder any written notice of its intention to redeem the property. Therefore, when plaintiff attempted to introduce parol evidence relating to the agreement between the parties to accept $2,400 as interest and $3,000 as principal in order to extend the redemptive period beyond April 21, 1968, counsel for defendant objected and the trial judge admitted the evidence subject to the objection.
In the district judge's reasons for judgment, he concluded he should have sustained the objection to the introduction of any evidence tending to prove by parol evidence any extension of the redemptive period, and we agree with his conclusion. Louisiana Civil Code Articles 2275 and 2276 provide:
"Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."
"Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Also pertinent to the right of redemption are Louisiana Civil Code Articles 2569 and 2570 which require that the time fixed for the redemption must be rigorously adhered to, and that if the redemptive right is not timely exercised it becomes lost.
We think the following cases support the general principle that parol evidence should not be admitted to prove an extension of a right to redeem immovables: Blevins v. Manufacturers Record Publishing Co. et al., 235 La. 708, 105 So.2d 392 (1957); Andrews v. Tores, et ux, La.App. 2 Cir. 1953, 66 So.2d 432; Hoth v. Schmidt et al., 220 La. 249, 56 So.2d 412 (1951); DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949).
Since there is no evidence of any written notice having been given by Valley Land to Fielder on or before April 21, 1968, of its intention to re-extend the redemptive period in accordance with the second extension agreement nor to redeem the property by the payment of the balance due of $30,000 plus interest, we hold that, under the authority of the Louisiana Civil Code articles and cases cited above, title to the property became vested in Garland Fielder.
We consider the most serious aspect of the case relates to whether the sale is subject to being rescinded because of lesion beyond moiety. The following Louisiana Civil Code articles establish the principles governing the burden of proof, the degree of evidence, and the method of evaluation of property in lesion cases:
"Art. 1870. When lesion is alleged to invalidate a partition or sale, the party alleging it must first prove the value of the property sold, in the state in which it was at the time of the contract, according to the usual terms of credit given on sales of property of that description. He must then show how much the price given was less than such value; but if the price given was paid at longer periods than those usually given on such sales, the interest for the time exceeding such usual credit must be deducted from such price; or, if the price was paid in shorter periods than those of such usual credit, then the interest for the time such payment has fallen short of the usual credit, shall be added to the price actually paid; and from a comparison of the price after these additions or deductions *361 with the estimated value, the court shall determine whether according to law applied to the circumstances of the case, there is a lesion sufficient to invalidate the contract."
"Art. 2589. If the vendor has been aggrieved for more than half the value of an immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing's value."
"Art. 2590. To ascertain whether there is a lesion beyond moiety, the immovable must be estimated according to the state in which it was, and the value which it had at the time of the sale, or at the time the option was granted if the sale be made pursuant to a valid contract of option."
"Art. 1861. The law, however, will not release a person of full age, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases:
* * * * * *
"2. In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser."
The basic difference between the evidence adduced by plaintiff and by defendant on the question of establishing the value of the property for lesion purposes is that plaintiff attempts to prove the value by the "highest and best use" approach, whereas defendant contends the value should be determined according to the use of the property at the time of the sale. Defendant contends the case of Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956), rejects the highest and best use approach in determining whether there is lesion beyond moiety in the sale of immovable property. Defendant also cites the following cases as supporting the same principle: Crow v. Monsell (La.App. 2 Cir. 1967), 200 So.2d 700; and Whittington v. Whittington (La.App. 2 Cir. 1969), 229 So.2d 193.
Plaintiff, on the other hand, contends courts should take into consideration the highest and best use of property in order to arrive at its market value, whether the controversy is an expropriation matter or an action to set aside an act of sale because of lesion beyond moiety, and cites cases in support thereof: Martin v. Mays (La.App. 1 Cir. 1961), 127 So.2d 77; and Fletcher v. Smith (La.App. 3 Cir. 1968), 216 So.2d 663.
We do not wholly agree with the position taken either by plaintiff or defendant as to the proper method of evaluating property in an action to set aside a sale for lesion beyond moiety. The standard to be applied for determination of the value of the property is the fair market value at the time of the sale. "Fair market value" has been defined in numerous cases as meaning the amount a willing purchaser would pay a willing seller for a particular piece of property. See Henderson v. Dyer (La.App. 1 Cir. 1953), 68 So.2d 623, and cases cited therein. It is our opinion the supreme court, in the Armwood case, supra, did not intend to do away completely with any method or approach which would tend to establish the fair market value of property in lesion cases. Our review of the jurisprudence convinces us a party attempting to set aside a sale must discharge the burden of proof incumbent upon him which requires that he prove the value of the property by clear and convincing evidence. The burden of proof is much more stringent in lesion cases than in expropriation cases. The evaluation may not be based on conjecture, possibility or speculation. However, the highest and best use of the property may be considered along with all other evidence of value so long as it tends *362 to show "the value which it (the immovable) had at the time of the sale. (C.C. Art. 2590).
There were numerous experts who appraised the property and testified to its value. The lower court attached a great deal of importance to an appraisal made by K. A. Gavin, an appraiser for a Shreveport bank, who fixed the value of the property and improvements at $85,600 at the time it was purchased by Fielder from Valley Land. O. L. Jordan, an appraiser and realtor of Shreveport, appraised the land and the improvements at $62,000 on April 27, 1966, and at $71,000 on July 2, 1968. John L. Klock made an appraisal of the property on February 17, 1969, in connection with an application by Fielder for a farm loan on the property. He concluded the market value of the property on February 17, 1969, was $54,000.
Walter Hunter, an expert tendered by plaintiff, placed a value of $120,000 on the land and improvements. In arriving at his estimate of the value, he concluded the highest and best use of the property was for the development of a residential subdivision. Hunter also said he used the market data approach and sales of comparable property "as nearly comparable as I could find". Plaintiff's next appraiser was Frank Grigsby, and it was stipulated his testimony would be the same as Hunter's if he were placed on the stand. Lonnie Aulds, a Shreveport realtor, investor and real estate developer, valued the property for residential purposes at $190,000. He admitted it would require extensive development and the expenditure of approximately $700,000 in order to develop the property.
Taking all of the evidence into consideration, we conclude the evidence does not support a finding that the fair market value of the property exceeded $85,600 on the date of the sale. The testimony of all experts tendered by plaintiff was based on conjecture and speculation. The land was not suitable for a subdivision and there were no residential areas within several miles of the property. We agree with the trial judge that to evaluate this property as a residential subdivision would be indulging in speculation.
The last contention raised by appellant is that the sale price should be considered as $30,000 rather than $45,000 because Valley Land paid Fielder $15,000 when the first extension agreement was signed on April 21, 1967.
It is conceded Fielder paid Valley Land $45,000 cash when the property was originally purchased. It, therefore, seems clear to us that under the language of Civil Code Article 1861(2) "the price given" was $45,000 rather than $30,000. While it is true Valley Land later paid $15,000, which was to be applied to the redemptive price, this had the effect of reducing the amount required to be paid if the property was redeemed according to the redemptive provision of the original act of sale and the subsequent extension agreements. Appellant cites Brandon v. Slade, 122 La. 395, 47 So. 694 (1908); Lakeside Dairies, Inc. v. Gregersen, 217 La. 510, 46 So.2d 752 (1950) and 221 La. 503, 59 So.2d 701 (1952), in support of its argument. In Brandon it was held the amount paid by the purchaser on a mortgage that was assumed was to be considered in computing the purchase price rather than the total amount of the mortgage where there had been payments made on the mortgage. The Lakeside Dairies case involved a lease agreement with an option to purchase. The contract provided that if the option was exercised the lessee would receive credit for a portion of his rental payments on the total purchase price. The court held that the portion of the rental payments which were applied to the purchase price pursuant to the option agreement had the effect of reducing the actual purchase price for the purpose of determining whether the sale was subject to being set aside for lesion beyond moiety.
*363 This case was correctly decided under the provisions of Louisiana Civil Code Article 2590. We have no option in the instant case and have been cited to no cases where payments made subsequent to a cash sale have had the effect of reducing the price paid.
For the reasons assigned the judgment is affirmed at appellant's cost.