322 So.2d 270 (1975)
STATE of Louisiana, DEPARTMENT OF HIGHWAYS
v.
MODEL DEVELOPMENT CORPORATION.
No. 12729.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
As Modified December 9, 1975.
*271 Robert L. Ledoux, Jack C. Fruge, Sr., Bernard Malone, Johnie E. Branch, Jr., D. Ross Banister, William W. Irwin, Jr. and Jerry F. Davis, Baton Rouge, for plaintiff-appellant.
Holloway, Baker, Culpepper & Brunson, Jonesboro, for defendant-appellee.
Before HALL, MARVIN and BURGESS, JJ.
MARVIN, Judge.
The State appeals from a judgment awarding $53,544.51 for expropriation of property for highway purposes as a "quick-taking" under L.R.S. Title 48, and for which the State had deposited $9,820.00 as its estimate of just compensation. The landowner, in answer to the appeal, seeks an increase in the lower court's award.
The property is on the east side of Highway 167 in the Village of Hodge, where Highway 147 intersects this highway on the west. The property from which the expropriation was made originally fronted almost 216 feet on the highway, having a narrower rear width, with a depth averaging approximately 350 feet. It contained 48,432 square feet. A strip across the front of the property averaging 18 feet in depth and containing less than 1/10th an acre (3,943.6 square feet) was taken. The taking resulted in the highway right of way being five to eight feet from the front of a beer store situated on the remaining property.
The beer store is a prefabricated metal building 56 feet wide, containing approximately 1,100 square feet. There is a paved area surrounding the building, approximately 2,400 square feet of which was included in the strip expropriated.
Five appraisers testified, three of which used market data or comparable sales approach in determining the value of the property. Two of the landowner's three appraisal witnesses used the income approach as a basis for their estimate of just compensation.[1] All three of the landowner's experts relied heavily on the fact that the building on the remaining property was a beer store, "unique" in its operation, according to these witnesses, because of the lack of other available property for such a business and because of a village ordinance which limits to three the number of retail beer permits in the town. In its Reasons for Judgment, the trial court emphasized "uniqueness in location and utility," among other reasons for the award made, concluding that the highest and best use should be "that of a beer store because of its location and the only place that could obtain a license at the time of the taking." The court below then adopted the income approach in determining the award, stating that the comparable sales or market approach was not considered appropriate because the state appraisers using this approach *272 did not give the property any additional value for the "uniqueness in location and utility."
In Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40 (1957), the landowner had the sole and exclusive right to sell liquor in that area of Alexandria in which the property to be expropriated was located. This right arose because in that area the landowner's liquor store was legal as a nonconforming use (and the only non-conforming use liquor store) which preexisted an ordinance zoning that area residential. It was contended by the landowner's counsel that these factors warranted evaluation of the property, ". . . (a) on the basis of rental income or return, and (b) by reason of location, rental income, business income and exclusive right to sell liquor in the immediate vicinity." The Supreme Court answered in this way:
"The contention of counsel for the defendant that it was error for the trial judge, in making the award, not to consider. . . the value of the permit to sell liquor in this particular residential zone without competition for an area of three and a half blocks, is without merit, for such claims are considered as damnum absque injuria * * *
"As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation in the diminution in the value of the property. . . . i. e., to its value for rental and sale." Nassif, supra, 94 So.2d pages 43-44.
In Nassif, the entirety of the property was takena complete destruction of the businesswhile in this case, we are concerned with only a part of the property and no destruction of the business.
We are not at this time called upon to pass on the village ordinance under which the contention is made to support the "uniqueness" factor because it restricts the number of beer permits in any given area. We have serious doubts, however, that the legislature has given this authority either to municipalities or to the Alcoholic Beverage Commissioner of the Department of Public Safety whose responsibility it is to issue and supervise statewide the operation of such permits.
Additionally, we note the almost complete absence of factual testimony upon which the rental income approach stands. A former manager of the beer store testified as to the gross sales of the business. On direct examination, he stated ". . . averaged close to $300,000.00 a year . . . I didn't keep books or anything, I just managed it. We had a CPA keep books, and I didn't keep books, but I went by the occupational license; that's the way I could tell. Of course I didn't add it. I had a deposit book, I could add it up but I didn't take time to add it up. I didn't have time, put it that way."
In Dakin and Klein, Eminent Domain in Louisiana, Bobbs-Merrill Company, Inc. 1970, Chapter IV, Section 6(C), at page 222, the prerequisites for capitalization of rental income are set forth.
"Prior to the use of a mathematical capitalization technique, the appraiser must prepare several preliminary estimates: (1) He must estimate the amount of the expected future gross income from the property. (2) He must estimate the possible rent loss due to vacancies and bad debts. (3) He must estimate the amount of the expected operating expenses and capital charges that the property will bear during the time that the gross income is being received. (4) By deducting the expenses and charges from the gross income, he will arrive at an estimate of the net income. (5) He must estimate the probable duration of this netincome stream. This estimate may be conditioned by the economic life of the building or by a consideration of the time that typical investors would tend to hold the property before offering it for resale. (6) He must select the capitalization or discount rate to be used for the *273 property under appraisal. (7) He must choose a capitalization technique to process the net income in accordance with the facts and assumptions that the particular property presents." Footnote omitted.

From the testimony of the former manager, which was assumed to be correct by the landowner's appraisers using the rental income approach, these appraisers formed their opinion under this approach. From a publication furnished by the Commercial Investment Division of the National Institute of Real Estate Brokers, the appraisers then seized on language which, as a general rule, fixes economic rent at a percentage of the gross sales of a given type business. Using charts from this publication, the appraiser computed $1,500.00 a month as the indicated monthly "economic rent." He capitalized this by another chart to reach the value of the land and building of this particular property at $150,000.00. We do not find in the evidence, however, that this building was leased to anyone for any price. The former manager of the beer store whose testimony is partially quoted above, further testified that he had obtained his own beer permit one or two months before the trial of this case and that he was paying $300.00 a month rent for the location in which he operated in Hodge. The actual rent paid, if any, and a reasonable factual basis on which the rental income approach to valuation, is not shown in the record.
In Nassif, supra, the court noted that the other approaches are material to the extent that they "assist" in determining value. The Supreme Court used similar language in State v. Crow, 286 So.2d 353, 356-357, (La.1973), wherein the court noted that the comparable sales approach ". . . in most cases . . . is most likely to produce accurate results . . .", but that the courts are not limited to this approach, especially where "income studies . . . provide a substantial aid in evaluation." Emphasis supplied. In Crow, supra, the Supreme Court quoted with approval language of the First Circuit that the rental income approach may be resorted to for the purpose of "supplementing" the appraisal.
In State, Dept. of Highways v. Nisbet Properties, Inc., 309 So.2d 398, 401 (La. App. 2d Cir. 1975), we quoted recent jurisprudential pronouncements of the Supreme Court on the issue of just compensation recognizing:
"`. . . Whatever approach or formula of valuation used, it should take into consideration "all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken."'"
In the instant case then we hold that the lower court's reliance on the "uniqueness in location and utility" of the property expropriated was misplaced, factually and legally. The trial court was in error when it decided not to consider comparable sales appropriate to determining just compensation on the grounds that this method did not take into consideration the "uniqueness" factor. In making the determination of just compensation, comparable sales should not be the exclusive method, but should be considered, where available, with other approaches which may be factually appropriate where these other approaches substantially aid, assist or supplement the determination of just compensation.
For the reasons above and hereafter stated, we find erroneous the lower court's award of $25,751.71 for the 3,943 square feet of property taken, more than $6.50 per square foot.
The date of the taking herein was March 29, 1974. Two appraisers for the State (hereafter A and B), and one for the landowner (hereafter C), used sales which in varying degree, they considered comparable in proximity of time and location, as *274 a basis for their ultimate appraisal. These sales are as indicated:

 DATE OF SQUARE FOOT
APPRAISER SALE VALUE ASSIGNED
 C 9-2-66 $1.00
 A, B 9-16-69 .97
 C 2-22-71 1.08
 A, B 5-7-71 .87
 A, B, C 3-14-72 .95

Judgment factors caused these appraisers to adjust the market data or comparables in making an evaluation of the property taken. The landowner's appraiser (C) emphasized and strongly relied on the "uniqueness" factor in making his adjustments while the State's appraisers treated the property as retail commercial. Their ultimate appraisals were as follows:

APPRAISER SQUARE FOOT VALUE
 A $1.15
 B 1.15
 C 3.20

We observe, but do not find controlling, that in recent expropriation cases from Jonesboro-Hodge before this court where property on the same highway was taken at about the same time as the taking here, the award per square foot, made or approved by this court, was respectively as follows:

2ND CIRCUIT
DOCKET NO.
OR CITATION AWARD PER
AND NAME LOCATION SQUARE FOOT
12,711 Between Jonesboro-Hodge
DeJean $ .73[*]
12,699
Bounds Jonesboro $1.25
313 So.2d 886
Church property Hodge $1.27
313 So.2d 918 Jonesboro
Whitman Corner Lot $1.75

Considering the location of the property across from the highway intersection and its proximity to the paper mill in Hodge with its many employees, we conclude a fair and just award for the property taken would be $1.30 per square foot. The property behind the beer store is of lower grade than the front 70 feet of the property and is traversed by a ditch. The trial court, in making calculations of value, determined for this reason that the rear portion of the property was worth $2,000.00 per acre, but allowed $10,000.00 for the costs of culverts and fill dirt to reestablish the front use of the property. In State, Dept. of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Dept. of Highways v. Spera, 272 So.2d 765 (La.App. 3d Cir. 1972), certiorari denied, 272 So.2d 695 (La. Sup.Ct.1973); and State, Dept. of Highways v. Smith, 272 So.2d 746 (La.App. 3d Cir. 1972), certiorari denied, 272 So. 2d 696 (La.Sup.Ct.1973), there was employed the front portion-rear portion of determining value where a strip of property is taken. The rule of thumb under this technique is to assign four times the value to the front one-fourth of the tract as is assigned to the rearmost one-fourth of the property. If the rearmost portion of the instant property, brought to an improved condition by use of fill dirt and culverts, is worth $12,000.00 per acre, approximately 25 cents per square foot, the front portion improved is worth $1.00 or more per square foot. These factors support our determination of just compensation for the property taken.
The trial court awarded a total of $2,482.00 for specific improvements taken, concrete paving, chain link fencing, guard rails and a sign. The trial court's total, however, is less than the highest amount estimated by one of the State's appraisers. We shall allow the highest total amount used by the State's appraiser, or $2,809.00.

SEVERANCE DAMAGE
The trial court found no severance damage to the real estate by reason of the taking, but that there was severance damage to the building, principally because the *275 immediate parking area in front of the building (56 × 18 feet) had been taken. This is slightly less than the total 2,400 square feet of paved area which was taken. Estimates of the cost to reestablish parking areas to the sides and the rear of the building and improve the rear entrance to the building ranged from a low of $4,455.00 by one of the State's appraisers (which estimate included an "extra" $1,000.00 for contingencies) to a high of $71,000.00 by one of the landowner's appraisers. This was referred to by the appraisers as "cost to cure," and which included some depreciation in the value of the building because the highway right of way was moved almost 18 feet closer to the building by reason of the taking. The trial court found "the improvements have been damaged in the amount of sixty percent . . ." (of $25,518.00) or $15,310.80, which was awarded as severance damages. The lower court reached this figure by adding together all of the improvements on the property, total paved area, total linear feet of guard rails and a sign, and deducting from this sum ($28,800.00), the estimated value of improvements taken. In assigning values to the improvements on the property, the lower court assigned a depreciated value to the building of $21,540.00. Once the parking area has been reestablished and the rear entrance to the building made more accessible, the building will have front and rear entrances, an equal amount of parking spaces as before, but without an immediate front parking area as before, of approximately 1,100 square feet. With these factors in mind, we conclude that a just and fair award for severance damage, including the cost of reestablishing the front use tract and parking and improving the rear entrance to the building would be a total of $17,000.00, apportioned $12,544.00 as severance damages to the building (slightly less than 60 percent of its depreciated value assigned by the trial court) and $4,455.00, which includes the contingency "extra" above mentioned, for the cost to cure.

EXPERT WITNESS FEES
The lower court found "expert witness fees for the defendant are fixed in the amount as testified to by them in court for their appraisal and preparation for trial . . .", which were fixed in the judgment below as follows:

H. L. Bass ..................... $2,100.00
O. L. Jordan ................... $2,150.00
Hab Monsur ..................... $2,225.00
Darrell Willett ................ $2,450.00
A. Ray Bond .................... $ 300.00
Lavelle Nunn ................... $ 400.84

In recent expropriation cases involving the same highway project and most of the same witnesses, this court found similar fees to be excessive. See State of Louisiana, Through Department of Highways v. Malcolm D. Whitman, 313 So.2d 918 (La. App. 2d Cir. 1975); State of Louisiana, Through Department of Highways v. United Pentecostal Church of Hodge, Louisiana, 313 So.2d 886 (La.App. 2d Cir. 1975). In line with these cases and for the same reasons expressed therein, we disallow the fees for Lavelle Nunn and A. Ray Bond and fix the expert witnesses' fees as follows:

Habeeb Monsour .................... $650.00
H. L. Bass ........................ $650.00
Darrel V. Willet .................. $650.00
O. L. Jordan ...................... $650.00

See also State of Louisiana, Dept. of Highways v. Olive J. DeJean, 322 So.2d 265 (La.App. 2d Cir. 1975), rendered this date.

MOTION TO DISMISS APPEAL
Defendant filed a motion to dismiss the appeal on the grounds that the Highway Department failed to deposit the excess amount awarded by the trial court prior to taking the appeal and that the attorney for the Highway Department was not authorized to take and perfect an appeal on behalf of the State. A similar motion was overruled in Whitman, supra, and *276 United Pentecostal Church, supra. For the reasons expressed in those cases, the motion to dismiss the appeal is denied.
For the reasons assigned, the judgment of the trial court is amended to reduce the total amount awarded to a total of $24,935.68, and to fix expert witness fees as above set forth.
Amended, and as amended, affirmed.
NOTES
[1] This approach is sometimes called the capitalization of income method or the rental income method. See Dakin and Klein, Eminent Domain in Louisiana, Bobbs-Merrill Co., Inc., 1970. Chapter IV, Section 6.
[*] This property was adjusted downward because it was below the grade of other property.