MARVIN, Judge.
Plaintiffs sold to the State two strips or parcels of property to be included in the right of way necessary for the widening of Highway 167 through Jonesboro-Hodge. Two months later, plaintiffs brought this action to rescind the sale on the grounds of lesion beyond moiety. Judgment below granted plaintiffs’ demand and the State appealed. We reverse.
From the record, we have prepared the following map of pertinent factors. Tracts A and B in boldface, are plaintiffs’ parent tracts from which they sold parcels to the State. Other tracts 1-8 are properties from which the State has expropriated parcels to be included in the right of way and the value of which has been considered on ap *644 peal.[1] Comparable sales used by expert witnesses in appraising property in those cases were used by the appraisers here.

*643

*644 From Tract B plaintiffs sold the shaded triangular parcel at the northwest corner (57' on each street and 46.5' on the third side) comprising .028 acres (1219 square feet). From Tract A plaintiffs sold a strip varying in width along their entire highway frontage (almost 1600 linear feet) comprising 2.298 acres (100,100.88 square feet). This strip averages 62.56 feet.
The deed from plaintiffs to the State recites this consideration:
“. . . [$30,808.00] . . . “It is understood and agreed that Vendor reserves unto himself, his heirs and assigns, all oil, gas and other minerals beneath the area hereinabove described, and more specifically under the provisions of Act 278 of the Regular Session of the Louisiana Legislature for the year 1958; it being specifically understood, however, that while no exploration, drilling, nor mining of oil, gas or other minerals of any kind shall be conducted upon said area, there may be directional drilling from adjacent lands to extract the oil, gas or other minerals from under said area.
“The Department shall construct a standard vehicular approach within the limits of the property herein conveyed, from the roadway to the Vendor’s remaining property to the left of the centerline opposite Highway Survey Station 83 + 00.
“The Vendor acknowledge [sic] by these presents that a portion of the herein-above described property is being acquired for a sight clearance flare and that no direct access shall be permitted to and from the adjacent property across that portion of property designated as sight clearance flare on the construction plans for said project, and this provision shall be binding upon the said Vendor, his heirs, successors, and assigns forever.”
The cash portion of the consideration is not apportioned between the parcels acquired from Tracts A and B.
Estimating the fair market value of the triangular parcel sold from Tract B west of the highway presents no real difficulty. The grade or elevation of this parcel is generally the same as the highway. The parent tract is accessible and is or has been used as commercial property (a drive-in retail food establishment). The highest estimate by the State’s appraisers was $1.30 a square foot. The lowest estimate by plaintiffs’ appraisers was $2.00 a square foot. The trial court found the square foot value to have been $1.75, which is generally in accord with the values determined by this court in the expropriation cases mentioned. Whitman, for instance, assigned this same square foot value to Tract (2); Bounds, Tract (3), assigned $1.25; Oil Mark, Tract (5), assigned $1.80. The fair market value of the parcel sold from Tract B (1219 square feet) at the time of the sale was $2,134.44.
The fair market value of the strip along the highway which was sold from Tract A is not so easily estimated. The parent tract, comprising approximately 13 acres, is undeveloped because of its topography. Except for the northernmost 400 feet (which itself is some 10 feet below highway grade) most of Tract A is 20-40' below highway grade. The highest appraisal by the State’s expert witnesses for the strip sold from Tract A was $37,000.00, while the lowest appraisal *645 by plaintiffs’ appraisers was $84,085.00. Plaintiffs’ appraisers, however, generally reached their valuations by estimating the quantity and cost of fill dirt considered necessary to bring the front portion of Tract A to a grade which would be commercially usable. This estimated cost was then deducted from the estimates of what the property would be worth if commercially usable to reach a fair market value. Plaintiffs’ three appraisers differed in (1) the estimates of the amount of fill dirt necessary; (2) the grade or elevation to which the property would be brought; (3) the source of fill dirt and the areas along the highway where and in what respective quantity the fill dirt would be placed, and (4) the cost of acquiring and compacting the fill dirt.
Some of several appraisers (four for the State and three for the plaintiffs) arbitrarily divided the property into different economic units. No one appraiser’s division corresponded exactly with the division used by the others, in size or in number of units.
The trial court used an economic unit approach and also used the front land-rear land method or approach.[2] In dividing the property into economic units, the court generally followed the division suggested by some of the appraisers. Three economic units were selected and superimposed on the front land-rear land approach. The southernmost unit, as the least usable because of terrain, was allotted a highway frontage of 786 feet; the middle unit, the next least usable, was allotted 300 feet, and the northernmost unit, as the most usable, was allotted approximately 400 feet of highway frontage. The trial court valued the southernmost unit at 30 cents a square foot, the middle unit at 75 cents and the northernmost unit at $1.50. The lower court determined by this method that the value of the entire strip was $60,394.00, which when added to the value of the triangular parcel from Tract B, would be $62,-528.84, or more than twice the' consideration paid by the State ($30,808.00). We observe that the value of the strip could have varied by simply adjusting the highway frontage of each economic unit and that if the value of the entire property (from Tracts A and B) was determined to have been only $912.84 less than $62,528.84 the sale would not have been deemed lesionary below.
The Civil Code Articles (1860, 1861, 1870, 1871, 2589-2591) and cases interpreting them establish several principles. We summarized the applicable principles in V.alley Land Corporation v. Fielder, 242 So.2d 358 (La.App. 2d Cir. 1970). We said:
“The standard to be applied for determination of the value of the property is the fair market value at the time of the sale. ‘Fair market value’ has been defined in numerous cases as meaning the amount a willing purchaser would pay a willing seller for a particular piece of property . Our review of the jurisprudence convinces us a party attempting to set aside a sale must discharge the burden of proof incumbent upon him which requires that he prove the value of the property by clear and convincing evidence. The burden of proof is much more stringent in lesion cases than in expropriation cases. The evaluation may not be based on conjecture, possibility or speculation. However, the highest and best use of the property may be considered along with all other evidence of value so long as it tends to show ‘the value which it (the *646 immovable) had at the time of the sale.’”[3] [sic]. 242 So.2d 361-362.
We emphasize that we are not here considering the issue of value of the land as exclusively under expropriation guidelines, but under the principles applicable to lesion. We also observe the cash consideration for the two parcels is not the sole consideration. The deed also recites (1) that minerals were reserved to plaintiffs (and imprescriptably, by former R.S. 9:5806, repealed by Act 50 of 1974 and reenacted as R.S. 31:149) and that a “standard vehicular approach” from the highway to plaintiffs’ remaining property was required to be constructed by the State. Some value of course, must be assigned to these items, as well as to whatever benefits may be derived by plaintiffs’ property from the improving and widening of the highway.
The factors concerning fill dirt, economic units and highway frontage, and consideration other than the cash amount recited, render speculative the result below. The burden is on plaintiffs to establish by clear and convincing, and not by speculative, evidence that the price paid for immovable property did not exceed by one-half the market value of the property at the time of the sale. Valley Land Corporation v. Fielder, supra.
For these reasons, and at the cost of plaintiffs-appellees, judgment below is reversed and the demands of plaintiffs are rejected.

. Respectively, these tracts were considered in these appeals: State, Dept, of Highways
(1) v. McDonald, 329 So.2d 898 (1976);
(2) v. Whitman, 313 So.2d 918 (1975);
(3) v. Bounds, 319 So.2d 549 (1975);
(4) v. Salter, 332 So.2d 308 (1976);
(5) v. Oil Mark Corporation, 324 So.2d 606 (1975);
(6) v. Warner, 329 So.2d 913 (1976);
(7) v. Kilpatrick, 327 So.2d 452 (1976);
(8) v. DeJean, 322 So.2d 265 (1975).
Other appeals which we have considered involve properties north of tract eight. These appeals include: State, Dept, of Highways v. United Pentescostal Church, 313 So.2d 886 (1975);
and
v. Model Development Corporation, 322 So.2d 270 (1975).

. In Model Development Corp., supra, we observed:
“In [cited cases] . . ., there was employed the front portion-rear portion of determining value where a strip of property is taken. The rule of thumb under this technique is to assign four times the value to the front one-fourth of the tract as is assigned to the rearmost one-fourth of the property. If the rearmost portion of the instant property, brought to an improved condition by use of fill dirt and culverts, is worth $12,000.00 per acre, approximately 25 cents per square foot, the front portion improved is worth $1.00 or more per square foot. These factors support our determination of just compensation for the property taken.” 322 So.2d 274. (citations omitted).
The rear portion of the Model Development Corporation tract was about five feet below highway grade.

. See also: Succession of Witting, 121 La. 501, 46 So. 606 (La. 1908); Foos v. Creaghan, 226 La. 619, 76 So.2d 907 (1954); Morris v. Kieinpeter, 197 La. 758, 2 So.2d 203 (La.1941).