| xSTEWART, Judge,
dissenting.
For the following reasons, I respectfully dissent from the majority holding and de novo review. After a careful review of the record and pertinent authority, I find that, based on the evidence presented, the trial court properly determined the “fair market value” of the subject property and was not manifestly erroneous in ruling that the sale was lesionary.
Defendant Smith contacted the Cooks in June, 1994, about selling the 160-acre tract of timberland in Winn Parish. By cash deed executed on October 24 and 26, 1994, defendants purchased the property from Mrs. Cook for $84,215.25. Less than two weeks later, defendant Smith contacted Steve Bar-ham, manager of the Dodson Forestry and Logging Division of Williamette Industries, to inquire if Williamette was interested in purchasing the 160-aere tract. On November 7, 1994, Mr. Barham had the tract of timber land cruised and valued the timberland at $192,180.00. Approximately one month after the sale to defendants was consummated, Williamette offered $225,934.00 for the tract, which offer was communicated to, by telephone, and accepted by defendant Smith on November 29, 1994. In the sale to Williamette, defendants received an amount over $140,000 more than defendants paid for the property. I agree with plaintiffs’ assertion that the .profit made by defendants on selling the property to Williamette was not only lesionary but obscene.
Relying on Smith v. Huie-Hodge Lumber Company, Ltd., the majority concluded that the trial court’s determination that the fair market value of the 160-acre tract exceeded $168,430.50 was based on its “singular focus” on Williamette’s offer and was erroneous as a matter of law because, in accordance with Smith, there “ought to be certainty, or practical certainty” in valuing property in a lesion case. Smith v. Huie-Hodge Lumber Company, Ltd., 129 La. 28, 38, 55 So. 698, 702 (La.1911). That case involved a suit to annul the sale of timber |2based on lesion. Consequently, the court was concerned solely with the value of the timber, which they deemed to be “purely relative”, and not the total value of the property. Smith v. Huie-Hodge Lumber Company, Ltd., 129 La. at 38, 55 So. at 701. As in the instant case, the court determined the value of the timber based, not on “certainty, or practical certainty”, but on the estimations of timber volume by several experts whose estimations varied dramatically.
In concluding that the value of the 160-acre tract is less than the lesionary mark, the majority attempts to calculate the value of the timber with mathematical certainty, an impossibility considering the fact that all timber cruises offered at trial reflect only estimates of timber volume. The majority criticizes the Williamette cruise because that cruise examined 10% of the tract. However, *1271 there is no evidence to indicate that the other timber cruises, on which the majority places great weight, were hot made in precisely the same manner.
Further, the majority discounts Mr. Bar-ham’s valuation and estimation of timber volume because “there was a cloud of suspicion, speculation and bias surrounding Mr. Bar-ham’s testimony and Williamette’s bid.” The majority has no reasonable basis for finding any bias in Mr. Barham’s testimony. The trial court apparently found Mr. Barham’s testimony credible and the best'evidence of fair market value. Mr. Barham nor William-ette, his employer, were parties to this action. Neither had any connection to plaintiffs. “Though everyone examined the same forest,” unlike the majority, I find no prejudice in Mr. Barham’s testimony.
The majority ignores several pertinent facts which indicate “some obvious bias” by defendants’ witnesses. B & S Timber, author of one timber cruise, employed defendant Smith. The owner of B & S Timber, a defense witness, testified that he signed a letter, prepared by defendant Smith and dated October 12, 1994, which offered defendant Smith $50,000 for the timber on the 160-acre tract. hAlso, another defense witness, Greg Wilbanks, a real estate, appraiser, was more closely connected to this action than was Mr. Barham because the bank that employed Mr. Wilbanks made the loan to defendants for the purchase of the property.
Even though the majority feels that its own evaluations of credibility and inferences of fact are more reasonable than those of the trial court, the trial court was in a better position to weigh the conflicting testimony and to determine which evidence was most credible. Plaintiffs presented evidence on the total value of the property consisting of Mr. Barham’s testimony regarding his valuation and estimation of timber quantity, the initial bid submitted by Williamette, the purchase price paid by Williamette and the testimony of Randy LaCaze, an appraiser, who testified that the price paid by Williamette was indicative of fair market value. Mr. Barham further testified that, had he prepared a valuation of the property in late September, 1994, it would not have been substantially different than the valuation he made in early November, 1994.
Mr. Wilbanks, testifying on behalf of defendants, valued the 160-aere tract at $123,-500. Other evidence offered by defendants regarding the total value of the property was their own, unsupported and undocumented, testimony about three other offers for the land.
The five timber cruises presented as evidence of timber volume reflected greatly different volumes for four types of timber. Although Williamette’s cruise reported the highest volume of pine saw logs, the Stone Container cruise and the Wilbank’s data included higher volumes for the other categories of timber.
The majority characterizes the testimony and evidence regarding the price of timber as “undisputed” and concludes that William-ette’s prices are “excessively speculative.” Johnny Meredith and Mr. Wilbanks both offered evidence regarding Uthe price of timber in October, 1994. Mr. Meredith testified that the price for pine saw logs was $300/ mbf, pine pulp was $25/eord, hardwood pulp was $14/cord, red oak logs was $300/mbf, white oak logs was $200/mbf, and miscellaneous hardwood logs was $100/mbf. Mr. Wil-banks testified that the price for pine saw logs was $330/mbf and hardwood logs was $180/mbf. Clearly, the testimony on timber prices is not “undisputed.”
Additionally, Mr. Barham testified that, during September and October, 1994, no dramatic movement of timber prices occurred which would have justified an increased value of the property from the amount of $84,-215.25 initially paid by defendants to the amount of $225,934.00 paid by Williamette.
Because the trial court was in a better position to judge the credibility of each witness and to determine the weight to be given each witness’ testimony, I believe that the appropriate standard applicable to the instant case is that articulated by the Louisiana Supreme Court in Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). An appellate court may not reverse a trial court’s find of fact absent manifest error or unless clearly wrong. The Louisiana Su *1272 preme Court annunciated a two-pronged test for setting aside the finder of fact’s determinations. The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and, then, must determine that the record establishes the finding is clearly wrong. Stobart v. State Through DOTD, supra; Mart v. Hill, 505 So.2d 1120 (La. 1987); Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App.2d Cir. 6/26/96), 677 So.2d 568. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review, even when the appellate court may feel that its own evaluations and inferences are more reasonable that those of the trial court. Blair v. Tynes, 621 So.2d 591 (La.1993); Stobart v. State Through DOTD, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989); Parker v. Centenary Heritage Manor Nursing Home, supra.
In reviewing conflicting expert testimony, the finder of fact has the responsibility to determine which evidence is most credible. Rosell v. ESCO, supra. Where two permissible views of evidence exist, the fact finder’s choice between them cannot be clearly wrong or manifestly erroneous. Rosell v. ESCO, supra.
In an action based on lesion, the standard applied to determine the value of the property is the fair market value at the time of the sale. La.C.C. art. 2589; Mullins v. Page, 457 So.2d 64 (La.App. 2d Cir.1984). Market value has been defined to mean the amount a willing buyer would pay a willing seller for a particular piece of property. Mullins v. Page, supra; Valley Land Corporation v. Fielder, 242 So.2d 358 (La.App. 2d Cir.1970).
In a lesion action, the plaintiff may introduce evidence of the highest and best use of the property rather than solely the actual use of the property at the time of the sale. Such evidence may be considered along with all the other evidence of property value. Nation v. Wilmore, 525 So.2d 1269 (La.App. 3d Cir.1988); Mullins v. Page, supra; Valley Land Corp. v. Fielder, supra.
When the appraisals vary greatly, the court must examine each appraisal to determine which is more reasonable. The court is not bound to accept or reject one expert’s testimony, but parts of each expert’s testimony may be accepted when the testimony is based on proper facts and sound reasoning. Montegut v. Davis, 473 So.2d 73 (La.App. 5th Cir.1985); Bisco v. Middleton, 383 So.2d 1047 (La.App. 1st Cir.1980). The trial court’s assessment of appraisers’ testimony is entitled to great respect. Montegut v. Davis, supra; Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App. 2d Cir.1975). The trial judge is in a better leposition to determine the weight and credibility to be accorded an expert’s testimony where the experts differ, and the trial judge’s decision as to the valuation of the property should not be disturbed on appeal unless manifestly erroneous. Montegut v. Davis, supra; State, Department of Highways v. Wax, 295 So.2d 833 (La.App. 1st Cir.1974).
The majority’s “singular focus” on the value of the timber, which they deem to be “the principal market value component for the land,” dismisses other components giving value to the property. Mr. Barham’s valuation of the land and the timber considered such other components whereas the valuation by defendants’ expert did not.' Mr. Barham testified that his value of the property was based on factors in addition to “the standing volume”, including “the reproduction that has value to us” and the volume of pre-merchantable timber.
Upon a considered review of the record, particularly the testimony and evidence adduced at trial, I do not conclude that the trial court was clearly wrong or manifestly erroneous in determining that the value of the 160-acre tract exceeded $168,430.50 and, therefore, in concluding that the sale was lesionary. For the foregoing reasons, I would affirm the judgment of the trial court.
APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, STEWART, CARAWAY and PEATROSS, JJ.
Rehearing denied.