968 So.2d 1184 (2007)
Luzon JOINER, Plaintiff-Appellant
v.
Robert S. ABERCROMBIE and Brenda Kay Hobson Abercrombie, Defendants-Appellees.
No. 42,638-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2007.
Rehearing Denied November 29, 2007.
*1185 Kenneth L. Harper, for Appellant.
Donald L. Kneipp, Monroe, for Appellees, Bruce E. Hampton.
Before BROWN, GASKINS, and DREW, JJ.
BROWN, C.J.
On February 18, 2004, plaintiff, Luzon Joiner, an elderly World War II veteran, sold a 198-acre tract of land located on Highway 33 in Union Parish to defendants, Robert S. Abercrombie and Brenda Kay Hobson Abercrombie, for $110,000. Robert Abercrombie, a timber buyer and manager, had bought and cut timber on this tract from Joiner in the past. The deed was drafted and notarized by attorney Bruce Hampton. Within one month of the sale, on March 17, 2004, defendants transferred the property by an exchange deed to Pinoak Investments, LLC, which developed and sold the property as a residential area. Attorney Hampton, one of the owners of Pinoak, signed the exchange deed as the duly authorized manager of Pinoak. Exactly what Pinoak paid for the property is at issue in this action for damages. Plaintiff alleges lesion beyond moiety, contending that the sale price of his transfer to the Abercrombies was less than one-half of the value of the property. The trial court found that plaintiff did not prove *1186 lesion and dismissed his lawsuit. We reverse and render judgment in favor of plaintiff.

Discussion
Lesion beyond moiety is a sale of a corporeal immovable for which the buyer paid less than one-half of its fair market value. Lesion can be claimed only by the seller. La. C.C. art 2589. Fair market value is defined as the amount a willing and informed buyer would pay a willing and informed seller for a particular piece of property, with neither being under any compulsion to buy or sell. Cook v. Mixon, 29,491 (La.App.2d Cir.08/22/97), 700 So.2d 1264, writ denied, 97-2443 (La.01/09/98), 705 So.2d 1101; Mullins v. Page, 457 So.2d 64 (La.App. 2d Cir.1984), writ denied, 459 So.2d 538 (La.1984). The immovable sold must be evaluated according to the state in which it was at the time of the sale. La. C.C. art. 2590.
When the sale price is lesionary, the buyer may elect to either return the immovable to the seller or keep the property and pay the seller a supplement equal to the difference between the price paid and the fair market value. La. C.C. art. 2591. However, when the buyer has sold the immovable, the seller may not bring an action in lesion against a third person. In such a case, the seller may recover whatever profit the buyer realized from the sale, not to exceed the supplement the seller would have received had the buyer kept the property. La. C.C. art. 2594. The seller carries the burden of proving lesion. Mullins, supra; Caillouet v. Zwei Bruderland, 99-590 (La.App. 3d Cir.11/03/99), 746 So.2d 752. The trial court's determination of fair market value is a finding of fact and is reviewed on appeal under the manifest error standard. Id.
Attorney Client Privilege
In In re Eddie Douglas, 06-0630 (La.11/29/06), 943 So.2d 341, the supreme court recognized the potential for confusion when an attorney wears a multitude of hats.
In this case, Burce Hampton drafted the deed transferring the property from plaintiff to the Abercrombies. He also handled the closing with the bank that loaned the money to the Abercrombies for the purchase. Thereafter, Pinoak, an LLC, which was owned by Attorney Hampton and Joel Kent Antley, bought the property from the Abercrombies. Hampton acted as manager of the LLC which immediately developed the property for residential use and had successfully sold all of the lots by the time this case went to trial.
The trial court ruled in a pre-trial motion to compel that there was an attorney-client relationship between the Abercrombies and Bruce Hampton and that their discussions concerning these transactions were privileged.
Rules of Professional Conduct Rule 1.8 provides:
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
(3) the client gives informed consent, in a writing signed by the client, to the *1187 essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.
Obviously, an attorney-client relationship existed between Hampton and the Abercrombies when they purchased the property and borrowed the purchase price from the bank. If Hampton was representing the Abercrombies when Hampton purchased the property for Pinoak, then he may have been in violation of the rules of professional conduct. The record does not disclose if Hampton complied with the requirements of Rule 1.8. It is our belief that Hampton was wearing another hat when he purchased the property for Pinoak and acting as a land developer. Therefore, the trial court was in error in denying Joiner the right to examine Hampton about the details of the transaction and in particular, the structuring of the purchase price between the LLC and the Abercrombies.
The Purchase Price
This lesion case arises from the sale of 198 acres on Highway 33 between Farmerville and Ruston, by plaintiff, Luzon Joiner, to defendants, Robert and Brenda Abercrombie. Robert Abercrombie had bought and cut the timber on this tract and had the trust of Joiner. The Abercrombies, without obtaining an appraisal, purchased the land for $110,000 on February 18, 2004.
Approximately one month after purchasing the property from Joiner, the Abercrombies sold the land to Pinoak Investment, LLC. The purchase price paid by Pinoak is in conflict. The Abercrombies contend that they sold the property to Pinoak for $155,000 cash and the exchange of a 22-acre tract of property worth $55,000. Thus, the price was $210,000 and not lesionary.
This price, however, does not include the $90,000 timber management agreement that Robert Abercrombie entered into with Pinoak. The $90,000 was considered an advance, and it bound Robert Abercrombie to provide timber management services to Pinoak for either 35 years or until Pinoak ceased to own the subject property, whichever occurred first.
Three things cause this court to seriously question the propriety and actual purpose of the timber management agreement. First, Larry Culp testified that he offered the Abercrombies $300,000 for the entire tract, but that Robert Abercrombie informed him that he was selling it to Bruce Hampton for more. Second, Robert Abercrombie testified that he has been in the timber business for 12 years and, as far as he knows, he has never heard of or seen anyone getting paid in advance for timber management services. Finally, Pinoak immediately started developing and selling the subject property as residential, with all of the lots being sold before the case went to trial. Once all of the property was sold, Robert Abercrombie's agreement to manage the timber terminated. In fact, the "timber management" agreement terminated without Abercrombie ever going onto the property or performing any service after he sold it to Pinoak.
It is clear that the timber management agreement was a sham, designed to conceal the true purchase price received by the Abercrombies, which was $300,000. We again note that the trial court disallowed Joiner's attorney's attempts to question Bruce Hampton or the Abercrombies about their dealings on the Pinoak purchase. This was error.
Fair Market Value
At trial Robert Horton and William Maxwell testified as experts in the area of real estate appraisal and valuation, respectively. Horton valued the property at *1188 $237,500 as of February 2004, and Maxwell valued the property at $2,500 per acre. However, John Messina, an expert in real estate appraisal testifying by oral deposition for the defense, determined that the fair market value of the property was $134,000.
Testifying by oral deposition, Joel Kent Antley was tendered by plaintiff as an expert in real estate valuation. Defendants, however, objected to his being accepted as an expert and the trial court never ruled on the objection. Antley testified that he believed that the property was worth $300,000 because that was what he thought Pinoak, in which he and Bruce Hampton were partners, paid for the tract of land.
The Abercrombies contend that Joiner failed to prove the fair market value of the property through clear and convincing evidence. Moreover, the Abercrombies assert that Joiner's, as well as his experts', valuations of the property were speculative, as they were based on the property being classified as residential and not cutover timberland. To support this assertion, the Abercrombies cite Valley Land Corp. v. Fielder, 242 So.2d 358 (La.App. 2d Cir.1971), in which this court found that in lesion cases, evaluations may not be based on conjecture, possibility or speculation.
In Valley Land Corp., supra, the plaintiff's experts concluded that the highest and best use of the property in question was for the development of a residential subdivision. While noting that the highest and best use of property may be considered, along with other evidence of value, to show the value of the property at the time of the sale, this court found that to evaluate that particular piece of property as a residential subdivision would be indulging in speculation. Id.
Based upon our finding in Valley Land Corp., supra, the Abercrombies argue that for this court to value the property based upon its highest and best use, i.e. residential, would require us to indulge in speculation. We, however, do not agree with this argument as the property currently at issue and the property at issue in Valley Land Corp., supra, are different. In Valley Land Corp., this court found that the disputed land was "not suitable for a subdivision" and that "there were no residential areas within miles." The property in the instant action, however, is located in an area with rapid residential growth, is propitiously situated between Ruston and Farmerville, and has a large amount of road frontage.[1] Furthermore, three out of four experts testified that the highest and best use of the property was residential.[2]
In an attempt to invalidate the experts' conclusion that the highest and best use of the property was residential, the Abercrombies posit that at the time of the sale the property was cutover timberland and *1189 that Joiner had no intentions of using the property for residential purposes. Thus, the Abercrombies conclude, to value the property based on the possibility that it could be used as residential is speculative and does not show the value of the property in the condition it was in at the time of the sale.
After reviewing the jurisprudence, we find that there is no rule of law restricting the application of the highest and best use, when determining fair market value in a suit for lesion, to the actual use of the property at the time of the sale. This court previously stated in Mullins, supra at 72:
[T]he plaintiff in a lesion suit may present proof of the highest and best use of the property rather than solely the actual use of the property at the time of the sale. Such proof may be considered along with all the other evidence of property value provided that it tends to show the value of the property at the time of the sale.
See also Nation v. Wilmore, 525 So.2d 1269 (La.App. 3d Cir.1988).
We find that the trial court's reliance solely on the appraisal of the one expert who evaluated the property as cutover timberland without considering the testimony of the three experts who concurred that, inasmuch as the property in question was ideally located and in an area with a burgeoning residential market, its highest and best use was residential was clear error. Further, within a month of the sale, the land was bought and developed as residential property.
Having found that the property should have been evaluated as residential, we must now determine the fair market value of the property at the time Joiner sold it to the Abercrombies. As we have found, within one month of the sale from petitioner to the Abercrombies the property was sold for $300,000 for residential development. Larry Culp testified that the Abercrombies were asking $300,000 before they purchased the property and that he offered $300,000 for the property. This price is supported by the valuations determined by the three experts who considered the property as residential rather than cutover timber.
Louisiana Civil Code art. 2594 states:
When the buyer has sold the immovable, the seller may not bring an action for lesion against a third person who bought the immovable from the original buyer.
In such a case the seller may recover from the original buyer whatever profit the latter realized from the sale to the third person. That recovery may not exceed the supplement the seller would have recovered if the original buyer had chosen to keep the immovable.
Finding the fair market value to be $300,000 and that the profit realized by the Abercrombies was $190,000, we find that Joiner is entitled to damages in the amount of $190,000.

Conclusion
For the foregoing reasons, the judgment of the trial court dismissing Luzon Joiner's petition for lesion is hereby reversed and judgment is rendered in favor of plaintiff in the amount of $190,000, together with interest from the date of judicial demand. Costs are assessed to defendants, Robert and Brenda Abercrombie.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, CARAWAY, DREW and MOORE, JJ.
Rehearing denied.
MOORE, J., would grant rehearing.
NOTES
[1] The property has road frontage along Willard Hill Road and Highway 33, which runs through a portion of the property in such a way that the property has road frontage on both sides of Highway 33. Due to the large amounts of road frontage, the property was considered ideal for a residential development.
[2] One of the "experts," Joel Kent Antley, testified by oral deposition and was tendered as an expert in the area of real estate valuation by the plaintiff but was objected to by defendants. A review of the record does not reflect whether the trial court accepted Antley as an expert. It should also be noted that Antley was Bruce Hampton's partner in Pinoak. Furthermore, one of the other experts, Robert Horton, was hired by Bruce Hampton to appraise the property prior to Pinoak purchasing the property from the Abercrombies. Both Antley and Horton, along with Maxwell, considered the highest and best use of the property to be residential.