DOMENGEAUX, Judge.
In this suit plaintiff, Laura Ann Landry, seeks to rescind a contract of exchange wherein she exchanged certain immovable property plus a balance of money for immovable property. She appeals the judgment of the district court in favor of defendants, Carlton Istre and Louella Istre. We affirm.
On March 9, 1983, Mrs. Landry entered into an act of exchange with Carlton Istre and Louella Istre. In the exchange, Mrs. Landry received approximately six acres of land near Andrus Cove, in Jefferson Davis Parish. This property contained a house, which Mrs. Landry subsequently used as her residence, two rent houses, a bam, formerly used in pig farming, and a chicken coup. Carlton and Louella Istre received a lot and house in the Edgewood Addition to the town of Lake Arthur, as well as $18,500.00 in cash and a promissory note signed by Mrs. Landry as maker for $71,500.00.
*1312 Following the transaction, Mrs. Landry brought this suit alleging that rescission of the contract is warranted under the Civil Code articles on redhibition and lesion. More specifically, she contended that Carlton Istre represented to her that two natural gas pipelines which traversed the property she received, were no longer in use. She contended further that Mr. Istre was aware that she intended to use the property as a mobile home park, and that, because one of the natural gas lines is still “live”, she is unable to profitably establish a mobile home park on the property. In addition, Mrs. Landry claimed that the property she received had a value of less than $60,000.00 at the time of the exchange, and that, therefore, the $90,000.00 balance she paid exceeded by more than one-half the total value of the property.
The trial court found that Mrs. Landry was aware of the existence of the live pipeline at the time of the transaction and that, in any event, the location of the pipeline does not prevent her from establishing a mobile home park on the property. He concluded, therefore, that Mrs. Landry was not entitled to rescind the contract based on redhibition. The trial judge also found that the value of the property Mrs. Landry received was greater than $60,000.00, and concluded that the exchange could not be rescinded on the basis of lesion. Mrs. Landry assigns as error these findings of fact made by the trial judge.
REDHIBITION
We first note that under Civil Code article 2667 "[a]ll the other provisions relative to the contract of sale apply to the contract of exchange.” Therefore, the Civil Code articles relative to redhibitory sales are applicable to contracts of exchange.
With respect to redhibition, the Civil Code provides the following pertinent articles:
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer'would not have purchased it, had he known of the vice. La.C.C. art. 2520;
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices. La.C.C. art. 2521; and
A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principle motive for making the purchase. La.C.C. art. 2529.
Mrs. Landry contended at trial that Mr. Istre represented that the pipeline traversing the six acre tract was no longer in use, and that it, therefore, would not interfere with her plans to develop a mobile home park on the property. She argues that the fact that the natural gas pipeline is in use is redhibitory because the pipeline company’s right-of-way limits the amount of space available to place mobile home trailers, preventing her from developing a profitable park. She argued that Mr. Istre’s representation as to the pipeline and the property’s suitability for a mobile home park are grounds for a rescission of the contract under article 2529, stating that her principal cause for making the exchange was to develop a mobile home park.
The trial judge concluded, however, that Mr. Istre had not represented to Mrs. Landry that the pipeline was no longer in use. He further concluded that, in any event, Mrs. Landry failed to prove that the existence of the pipeline prevented her from developing a mobile home park. After a review of the record we conclude that the trial judge was not manifestly erroneous in making these factual determinations.
Mrs. Landry, Mr. Istre, and Robert Istre testified at trial with regard to Mr. Istre’s representations concerning the pipeline.
The evidence reveals that the existence and location of the pipeline was marked by *1313 a number of prominent warning signs on the property. Mrs. Landry testified that, after she saw the warning signs, Mr. Istre told her that the lines were dead and that he was going to see about using these dead lines to run the water for fire hydrants.
On the other hand, Mr. Istre testified that he did not tell Mrs. Landry that the line traversing the property was no longer in use. He stated that she was aware that the pipeline existed because he showed her where it ran. He also testified that he told her that an older pipeline was dead and was to be used to run water for the fire hydrants, but that he never stated that the pipeline in question was dead.
Robert Istre, Carlton Istre’s son, testified that he was present when his father showed Mrs. Landry where the pipeline traversed the property. He stated that at that time his father did not tell Mrs. Landry that the line was dead, but that he did tell her that another line under the property was no longer being used.
We cannot conclude, after reviewing the testimony received at trial, that the trial judge was clearly wrong in finding that Mr. Istre did not represent that the pipeline was no longer in use. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Nor can we conclude that the trial judge was clearly wrong in finding that the location of the pipeline would not prevent Mrs. Landry from using the property as a mobile home park. Mr. Istre testified that because he had previously considered using the property as a trailer park, the pipeline company agreed to run the line in a manner which would not interfere with his plans for the park. He testified further that the reason he did not pursue developing the park was because of the start up cost, not because of the location of the pipeline.
The evidence also showed that the actual location of the pipeline was different from that shown on a right-of-way agreement, which only showed the proposed location of the line. Mrs. Landry relies on this proposed location in contending that the pipeline prevents her from developing the trailer park. She did not present any evidence showing that the actual location of the pipeline prevented her from developing a trailer park on the property. The trial judge concluded that this proposed location was not in fact the actual location of the pipeline. The testimony of Mr. Istre amply supports this finding. The trial judge was not clearly wrong in concluding that the pipeline as actually located did not prevent Mrs. Landry from establishing a mobile home park on the property.
Given these conclusions of fact, the trial judge correctly concluded that rescission of the contract under article 2529 was not warranted. Article 2529 requires that the seller make a declaration that the property has a quality which it does not in fact have. Since, as the trial court concluded, Mr. Istre did not represent the pipeline as being dead, and since the actual location of the line does not prevent the development of a trailer park on the property, article 2529 has no application in this case. Mr. Istre did not make a representation as to the quality of the property which it turns out the property did not have.
We also conclude that a rescission of the contract is not warranted under article 2521. Article 2521 declares that defects which are discoverable by simple inspection are not redhibitory. In the present case, the existence of a pipeline was apparent since it was marked by easily discoverable warning signs at a number of places on the property. In fact Mrs. Landry testified that she was aware that the pipeline existed. She argues, however, that because Mr. Istre represented the line as being dead, this condition should be considered a non-apparent defect.
Because we have concluded that the trial judge was not clearly wrong in finding that Mr. Istre did not represent the line as being dead, we do not reach Mrs. Landry’s contention. We hold that the existence of the pipeline was apparent due to the warning signs which were discoverable by simple *1314 inspection, and that this is sufficient under article 2521 to find that any defect which may have resulted as a consequence of the pipeline was not redhibitory.
Therefore, the trial judge did not err in refusing to rescind the contract on the basis of redhibition.
LESION
In Mrs. Landry’s second assignment of error she contends that the district court erred in finding that the six acre tract she received in the exchange had a value of more than $60,000.00 at the time of the exchange, thus precluding rescission of the contract for lesion under Civil Code art. 2666.
Under article 2666 rescission of the contract of exchange may take place on account of lesion beyond moiety
“if a balance has been paid in money or immovable [in movable] property, and if the balance paid exceeds by more than one-half the total value of the immovable property given in exchange by the person to whom the balance has been paid; in that case it is only the person who has paid such balance who may demand the rescission of the contract on account of lesion.”
In this case, Mrs. Landry exchanged immovable property plus a balance of $90,-000.00 for immovable property. Therefore, she is entitled to have the contract rescinded if the difference between the balance paid and the total value of the six acre tract is greater than one-half the value of the six acre tract. Rescission of the contract here is warranted if the value of the property Mrs. Landry received was $60,-000.00 or less at the time of the exchange.
In refusing to rescind the contract, the trial judge concluded that the property had a value of $63,500.00 at the time of the exchange. We must review this finding to determine whether he erred.
In reaching his conclusion, the trial judge heard the testimony and reviewed the appraisal reports of four expert real estate appraisers.
Mr. Charles Nelson, an expert real estate appraiser, appraised the property on behalf of Mrs. Landry. At trial he testified that his appraisal of the value of the property at the time of the exchange was $51,600.00. In reaching this figure he made an initial appraisal of $48,000.00, which was as of May 22, 1984. This figure did not include the value of the hog barn, which he valued at $3,600.00 as of October 2, 1985. Mr. Nelson took the sum of these figures to reach $51,600.00, which he indicated was the value as of the date of the exchange. Mr. Nelson’s report to this effect was introduced into evidence.
In arriving at these figures, Mr. Nelson used an appraiser’s reference book to determine the replacement cost of the residence. He used his general knowledge of sales in the area to determine the value of the land, hog barn, rent houses, chicken coup, and three water wells. Mr. Nelson, however, made no reference to any particular comparable sales which could have been introduced into evidence.
Mr. Henry Leblanc, Jr., also testified as an expert real estate appraiser for Mrs. Landry. Mr. Leblanc testified that his appraisal of the value of the property was $60,500.00. Mr. Leblanc indicated that he reached this figure by estimating the replacement cost of the house. He also testified that he used comparable sales to place a value on the land, but did not introduce evidence of any particular sales.
Mr. Curtis Hanks testified as an expert real estate appraiser on behalf of the defendants. Mr. Hanks, however, made his appraisal on June 8,1984, on behalf of Mrs. Landry. Mr. Hanks testified at trial that he appraised the property at $81,000.00. He testified that he based this evaluation on a number of comparable sales of homes and land. With respect to the rent houses, he testified that he based his evaluation on his general experience.
Mr. Stone Mack also testified as an expert real estate appraiser on behalf of the *1315 defendants. He placed a value of approximately $78,000.00 on the property. Mr. Mack testified that because he was evaluating the property as potential collateral for a loan, he did not attempt to determine a fair market value of the property. He indicated that his purpose was to determine its sufficiency as collateral for a $47,000.00 loan. He also stated that he only evaluated the residence and the land.
In the case of Montegut v. Davis, 473 So.2d 73 (La.App. 5th Cir.1985), writ denied, 477 So.2d 88 (La.1985), the Court made the following observations concerning rescission for lesion:
In an action to rescind a sale for lesion beyond moiety, when there are great variances among appraisals, it is the court’s function to examine each appraisal to determine which is more reasonable; the court is not bound to accept or reject one expert’s testimony, but parts of each expert’s testimony may be accepted when the testimony so accepted is based on proper facts and sound reasoning. Bisco v. Middleton, 383 So.2d 1047 (La.App. 1 Cir.1980).
The trial judge’s assessment of testimony given by appraisers is entitled to great respect. Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App. 2 Cir.1975). Where the experts differ, the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony and his decision as to the valuation of the property should not be disturbed on appeal unless shown to be manifestly erroneous. State, Department of Highways v. Wax, 295 So.2d 833 (La.App. 1 Cir.1974). The rule to establish value in lesion cases is not the highest value of comparable sales as in expropriation cases, but is more often the lowest or mean value of comparable sales. Weber v. Coppola, 176 So.2d 154 (La.App. 4 Cir.1965). However, speculative values may not be considered in determining the market value of a particular piece of property. Mullins v. Page, 457 So.2d 64 (La.App. 2 Cir.1984).
We also note that in a case for rescission for lesion the plaintiff’s burden of proof is by strong and convincing evidence, not by the usual standard of a preponderance of the evidence. Bisco v. Middleton, supra.
In written reasons for judgment, the trial judge thoroughly analyzed the reports of each appraiser. In summarizing he made the following evaluations in reaching his conclusions:
The court has carefully reviewed the appraisal reports, the comparables used and the testimony of the appraisers and finds that both the Nelson and LeBlanc appraisals are on the low side. The Le-Blanc appraisal does not give any value to the Hog Barn. The Nelson appraisal is much too low on the value of the rent houses and the value of the land is on the low side. On the other hand, the Hanks’ appraisal is on the high side. The value of the land and rent houses need adjusting downward. After making the proper adjustments the court arrives at a value of $63,500.00 as follows:
Land $15,000.00
Dwelling $28,600.00
Rent houses $10,000.00
Hog barn $ 6,000.00
Water wells $ 3,000.00
Fencing and other small buildings $ 1,000,00
Total $63,500.00
After a review of the record in light of the standards expressed in Montegut, we find no error in the trial judge’s holding concerning the value of the property. He properly evaluated each appraisal, weighing the comparable sales and the opinions of the witnesses. His conclusions were reasoned and supported by the record. We cannot, therefore, conclude that he was manifestly erroneous.
Since the balance of $90,000.00 which Mrs. Landry paid under the contract does not exceed by more than one-half the $63,-500.00 value of the property at the time of the exchange, the trial judge correctly refused to rescind the contract for lesion.
For the above and foregoing reasons, the judgment of the district court is affirmed.
*1316 Costs on appeal are assessed against plaintiff.
AFFIRMED.