NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 18-465

STATE IN THE INTEREST OF

E.A.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC 2015985
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and John E. Conery, Judges.

Conery, J., concurs and assigns reasons.

AFFIRMED.

Christine M. Mire
Attorney at Law
2480 Youngsville Hwy, Suite C
Youngsville, LA 70592
(337) 573-7254
COUNSEL FOR APPELLANTS:
    T. D.
    S. D.

**William T. Babin**
**405 West Convent St.**
**Lafayette, LA 70501**
**(337) 232-7747**
**COUNSEL FOR APPELLEES:**
   **R. M.**
   **K. M.**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Room 150**
**Lafayette, LA 70508**
**(337) 262-5913**
**COUNSEL FOR APPELLEE:**
   **Department of Children and FamilyServices**

**Jami Pellerin**
**Acadiana Legal Services**
**1020 Surrey St.**
**Lafayette, LA 70501**
**(337) 237-4320**
**COUNSEL FOR APPELLEE:**
   **E. A. D.**

**PICKETT, Judge.**

E.A.D. came to the attention of the state because he tested positive for opioids and methadone when he was born.[1] On December 15, 2015, E.A.D.'s mother stipulated to E.A.D. being adjudicated a child in need of care, and the court ordered E.A.D. to remain in his mother's care with family services being provided by the Louisiana Department of Family Services (DCFS). On January 4, 2016, the mother was present in court and was advised she tested positive on her drug screen and had been terminated from participation in the drug rehabilitation program she attended. On January 6, 2016, the mother was present in court and stipulated that the Family Service case be modified to custody with the state. T.D., the mother's father, was present at that hearing. E.A.D.'s mother was living with her parents, T.D. and S.D., who are the appellants herein, when E.A.D. was placed in state custody. The following colloquy occurred at that hearing:

> THE COURT: Right. So you can stipulate to that, if you wish to do so, which means that you would continue to work the plan, the child is going to be placed with your parents, the child's grandparent. I know your dad is here with you.
> And the worker has told me that you're willing to maintain the child at your home at this time?
>
> THE GRANDFATHER: Yes. Yes, sir.
>
> THE COURT: Okay. And so, J[.], the difference now is you do not have— you don't have the ability to come and go at that residence now because the child has been removed from you, and there's an obligation of your parents to not allow that to happen or it subjects them to the possibility the child would be removed, which I don't think anybody wants to happen.
>
> THE MOTHER: Yes, sir.

On January 19, 2016, E.A.D. was removed from the grandparents' physical custody for violating the court's order relating to the mother's presence in their home.

---

[1] We use initials throughout this opinion to protect the confidentiality of the minor in accordance with Uniform Rules—Courts of Appeal, Rule 5-2.

E.A.D. remained in custody of the state with regular review hearings at which the mother was either present with counsel or at which counsel appeared on her behalf and waived her presence. There was never any objection to the trial court's orders to continue E.A.D. in the custody of the state.

On September 27, 2016, nine months after E.A.D. was placed in foster care, the appellants filed a petition for intervention in the Child in Need of Care proceeding and were granted the right to intervene.

The next hearing was on December 20, 2016. The mother was present with legal counsel. S.D. was also present with legal counsel. At that hearing, after presenting evidence, the state recommended E.A.D. remain in the custody of the state with the goal changed from reunification to adoption. The trial court accepted the recommendation of the state and entered an order to that effect. There was no opposition to the state's recommendation or objection to the trial court's ruling by the appellants.

On June 26, 2017, a termination hearing was held and, ultimately, the mother's parental rights were terminated. The mother was not at the hearing but was represented by counsel. At this time, one-and-a-half years after E.A.D. was placed in foster care, P.D., T.D.'s sister, filed a Petition for Guardianship and asked for physical custody of E.A.D. While minutes reflect that the petition was filed on behalf of T.D. and S.D., the record and the transcript confirm that P.D. sought guardianship. The trial court refused to consider the Petition for Guardianship, as it had been filed on June 23, 2017. The trial court signed a judgment terminating the mother's parental rights on July 11, 2017. That judgment was not appealed. At a subsequent hearing, the court entered an order allowing the grandparents to visit E.A.D. according to a schedule set by DCFS.

On July 27, 2017, the foster parents filed a Petition for Adoption, which was assigned a separate docket number and allotted to a different division of the district court. On August 15, 2017, the appellants filed a Motion to Intervene in the adoption proceeding filed by the foster parents, with whom E.A.D. had been living since January

2

2016, and filed a separate Petition for Adoption of E.A.D. Following a hearing on October 23, 2017, Judge Rubin granted an exception of lack of subject matter jurisdiction and transferred the adoption petitions to the judge who handled the child in need of care proceeding in accordance with La.Ch.Code art. 1279.7(3)(a). On December 18, 2017, the trial court sustained the state's exceptions of no right of action and no cause of action filed in response to the Petition for Adoption filed by the appellants and dismissed the Petition for Adoption filed by the appellants. The trial court allowed the appellants to intervene for the limited purpose of determining the best interest of the child pursuant to La.Ch.Code art. 1209.

A hearing was held on January 8, 2018, to determine what is in the best interest of the child relative to the adoption petition filed by the foster parents and the intervention filed by the appellants.

The trial court issued Reasons for Ruling on February 7, 2018, wherein it ruled that it is in the best interest of E.A.D. to allow the Petition for Adoption filed by the foster parents to go forward.

The appellants filed an Application for Supervisory Writs with this court. This court determined that the judgment of the trial court is a final judgment and converted the writ to an appeal. *State in the Interest of E.A.D.*, 18-233 (La.App. 3 Cir. 5/16/18) (unpublished). In that ruling, this court noted that "the trial court's written judgment dismissing Relators' petition for adoption was signed on December 21, 2017, and notice of judgment issued that same date. That judgment was not appealed and is not the subject of the instant proceedings."

The appellants now appeal the trial court's ruling that adoption by the foster parents is in the best interest of E.A.D.

## ASSIGNMENTS OF ERROR

T.D. and S.D. assert five assignments of error:

3

1. The trial court erred when it excluded expert testimony of Dr. Lyle Lecorgne, a clinical psychologist, retained by [T.D. and S.D.] to offer testimony regarding the best interests of the child.

2. The trial court erred when it took judicial notice of the facts and evidence not contained in the record of these proceedings.

3. The trial court erred when it failed to allow [T.D. and S.D.] to present or proffer evidence that DCFS improperly removed E.A.D. from their care.

4. The trial court erred when it refused to allow [T.D. and S.D.] to present evidence and testimony relevant to the issues the court ruled upon.

5. The trial court erred when it failed to provide the appellants and other parties in these proceedings with their procedural and substantive due process rights.

## DISCUSSION

We note at the outset that the appellants have framed the issues in this appeal as a contest between the interests of family members and the interests of potential adoptive parents in an agency adoption following the termination of a parent's parental rights. It is undisputed that E.A.D.'s mother's parental rights have been terminated, and that is a final judgment not subject to review here. T.D. and S.D. have intervened in this suit pursuant to La.Ch.Code art. 1209 (emphasis added), which states:

A. Intervention in agency adoption proceedings shall not be allowed except on motion to the court and a showing of good cause.

B. Such intervention shall be limited to persons having a substantial caretaking relationship with the child for one year or longer, or *any other person that the court finds to be a party in interest.*

C. *The intervention of a party in interest shall be for the limited purpose of presenting evidence as to the best interests of the child.*

The trial court dismissed the Petition for Adoption filed by T.D. and S.D., and the appellants did not appeal the dismissal of their petition. Thus, the sole issue before the court in this case is whether the agency adoption by the foster parents is in the best interests of E.A.D. We review this factual determination of the trial court by applying the manifest error standard of review. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

4

In their first assignment of error, the appellants claim the trial court should have considered the testimony of Dr. Lyle Lecorgne, a clinical psychologist. T.D. and S.D. sought to introduce Dr. Lecorgne's testimony to show (1) it is in the best interests of the child to remain with a blood relative rather than allow non-relative parents to adopt; (2) the best way to minimize impact on E.A.D. if he is removed from the foster parents; and (3) the lifelong impact that will occur if adoption with non-relatives is allowed to proceed. DCFS filed a motion in limine seeking to exclude the testimony on the grounds that Dr. Lecorgne never met with either the child or the foster parents, and an expert report was not produced prior to his testimony. The trial court granted the motion in limine and excluded the testimony but allowed T.D. and S.D. to proffer the testimony.

Louisiana Code of Evidence article 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

The trial court made its ruling without hearing any evidence from Dr. Lecorgne. We have reviewed the proffered testimony and determine that Dr. Lecorgne's testimony is not "based on sufficient facts and data" and is not the "product of reliable principles and methods." Dr. Lecorgne's review of psychological literature to determine that generally placement with relatives is more beneficial to a child than placement with foster parents ignores the facts of this particular case. E.A.D. was removed from his maternal grandparents' home when he was five months old after a report that E.A.D.'s

5

mother had spent the night in the home of T.D. and S.D. He was placed with the foster parents and he has continuously lived with them since that time. Dr. Lecorgne has not assessed the specific needs of E.A.D. or the specific capabilities of the foster parents or the maternal grandparents.

Trial courts are vested with great discretion in determining if expert testimony is admissible, and an appellate court will not disturb the finding of the trial court unless there is an abuse of that discretion. *Heitman v. Christus Health Cent.*, 10-458 (La.App. 3 Cir. 11/3/10), 49 So.3d 609, *writ denied*, 10-2693 (La.App. 3 Cir. 1/28/11), 56 So.3d 957. We find no abuse of discretion in the trial court's conclusion that Dr. Lecorgne's testimony was inadmissible in this case.

In the second assignment of error, the appellants argue the trial court improperly considered the detrimental impact E.A.D. would suffer if he were removed from the home of the foster parents, with whom he has resided since he was five months old. The appellants argue the trial court improperly relied on training he had received and ignored the testimony of Dr. Lecorgne. As we have found that the trial court properly excluded the testimony of Dr. Lecorgne, we find no error in the trial court's failure to give weight to his conclusions. As for the contention that the trial court improperly relied on his knowledge and experience, we likewise find this argument without merit. "Obviously a judge cannot decide cases in a vacuum; we all must use our accumulated knowledge and experience in evaluating evidence and determining what makes one witness more believable than another." *Montegut v. Davis*, 473 So.2d 73, 80 (La.App. 5 Cir.), *writ denied*, 477 So.2d 88 (La.1985). The trial court in this case has a breadth of experience presiding over similar juvenile matters. In furtherance of his duties, he has attended seminars to allow him to better understand the complex issues raised in these types of cases. Trial judges are invested with a great deal of authority and discretion in these proceedings, and we will not fault the trial court for making itself

6

better equipped to grapple with such difficult and life-altering issues by seeking to learn as much as possible about how the decisions he makes affect the parties.

In their third assignment of error, the appellants claim the trial court should have allowed them to present evidence regarding the removal of E.A.D. from their care. The removal of E.A.D. from the care of the appellants while he was in the custody of the state occurred in January 2016. The appellants could have intervened in the child in need of care proceeding at that time, but delayed filing an intervention until September 2016. The appellants never sought guardianship of E.A.D., though their attorney did file a guardianship petition on behalf of the E.A.D.'s great aunt only days before the hearing to determine if parental rights should be terminated.

The appellants argue in brief that "DCFS should have, at some point, been required to clearly establish that E.A.D. was properly placed in its custody." This argument relies on a fundamental misstatement of the relationship between the state and caretakers in a child in need of care case. Once E.A.D.'s mother stipulated to modifying the case plan to custody with the state on January 6, 2016, because of her continued drug use, the state had sole authority to place the child. La.Ch.Code art. 672. There is nothing in the record before us to show that the appellants ever had legal custody of E.A.D. The record shows that E.A.D. was placed with the appellants until DCFS learned that the appellants allowed the mother to stay overnight in their home, which was a violation of the conditions upon which the placement of E.A.D. was made. Beginning in January 2016, when E.A.D.'s mother stipulated to granting custody to the state, the appellants never questioned, objected to, or opposed any order of the court until they filed their Petition for Adoption in August 2017. They did not appeal the judgment of the trial court terminating the parental rights of E.A.D.'s mother. That is a final judgment not before us in this appeal. They did not appeal the judgment of the trial court dismissing their Petition for Adoption on December 18, 2017. That is a final judgment not before us in this appeal. We find there is no evidence related to the

7

removal of E.A.D. from the care of the appellants that is relevant to the issue before us, the best interest of E.A.D. in the adoption proceeding filed by the foster parents.

In the fourth assignment of error, the appellants argue that the trial court refused to allow them to present evidence on the issue before the court. As we have stated, the only relevant issue before the court is the best interest of E.A.D., as outlined in La.Ch.Code art. 1209. The evidence the appellants attempted to introduce about the validity of proceedings in which there is a valid final judgment that has not been appealed is not relevant here. The evidence of a third party, a friend of the appellants, about the hardships of the child in need of care proceeding, is not relevant to the issue before this court. Likewise, while E.A.D.'s relationship with his brother is an element the trial court must consider, it is but one of many other issues that the trial court must factor in making a best interest determination for E.A.D. The writing purported to be created by the brother was properly excluded as hearsay. The appellants admit that the trial court did hear evidence from the appellants about the relationship between the brothers, though they argue they "were never fully afforded the opportunity to be heard." We find no error in the trial court's evidentiary rulings.

In their fifth assignment of error, the appellants argue they were not afforded due process. In their argument on this assignment of error, the appellants seek to collaterally attack the prior final judgments of the trial court, rather than litigate the best interest of E.A.D. as it relates to the adoption petition of the foster parents. The trial court was never presented with any pleading or argument that the previous judgments should be reversed or nullified. There is no contemporaneous objection or pleading opposing any motion made by the state or any order of the court in the record of the child in need of care proceeding, even after the appellants intervened therein. These arguments are raised for the first time in this appeal. *See* Uniform Rules—Courts of Appeal, Rule 1-3. We find no merit to this assignment of error.

8

## CONCLUSION

The judgment of the trial court is affirmed.  Costs of this appeal are assessed to the intervenors-appellants, T.D. and S.D.

**AFFIRMED.**

**STATE IN THE INTEREST OF E.A.D.**

Conery, J., concurs and assigns reasons.

I concur with the majority's well-reasoned opinion affirming the trial court's judgment that it is in the best interest of E.A.D. to allow the Petition for Agency Adoption filed by the foster parents to go forward. Further, I agree with the majority that the proffered testimony does not meet the necessary standards of La.Code Evid. art. 702, and it was properly excluded by the trial court.

Likewise, I find no "due process violation". E.A.D. was adjudicated a child in need of care (CINC) on January 6, 2016. Custody was placed with DCFS who allowed the child to remain at the home of his maternal grandparents, T.D. and S.D. where he had been living since birth. The mother was placed in the Lafayette Family Preservation Court[1] for treatment of severe drug addiction. Two weeks after placement with T.D. and S.D., DCFS removed E.A.D. from the grandparents' home and placed him in the foster home of R.M. and K.M., the prospective adoptive parents. The agency claimed that the grandparents ignored the specific warning of the trial judge not to allow the mother to stay overnight in their home. The grandparents waited over six months before filing a Motion to Intervene and for Discovery.

At the September 27, 2016 hearing, the grandparents were allowed to intervene, but discovery was denied. Counsel for the grandparents made no

---

[1] Though not explained in the record, it would appear that the Lafayette Family Preservation Court is a treatment-based program funded by DCFS that offers programs and services to family members suffering from drug addiction and related problems in CINC cases.

objection.  Their attorney mentioned that "it's my intention, if I'm allowed to intervene, to file a Petition for Guardianship. . . .that would provoke a hearing at a later date[.]"

The trial judge acknowledged that he signed the grandparents' Petition to Intervene, but made no mention of the grandparents' alleged Petition for Guardianship, and I could find no such petition in the record:

> MS. DAVENPORT: So, Judge, with the Petition for Intervention, are we addressing that today?
>
> THE COURT: I signed it. I granted him the right to intervene.
>
> MS. DAVENPORT: So that –
>
> MS. GUIDRY: He files whatever he wants to file.
>
> THE COURT: Yes.   That's his job, not mine. I signed the intervention.

There is no mention of guardianship at all until almost a year later.  The transcript of the June 26, 2017 Termination of Parental Rights (TPR) hearing indicates that the child's great aunt (P.D.) had filed a Motion for Guardianship, which was denied as untimely and hence no evidence was taken.  The grandparents later filed their own Petition for Adoption which was also denied.  As the majority noted, no appeals were taken from any of these judgments and these issues are not properly before us.

I agree that the record as a whole supports this well trained and experienced trial judge's exercise of his vast discretion and his decision that it is in the child's best interest to allow the adoption by R.M. and K.M to proceed.

However, in ruling that it is in the best interest of the child for the agency adoption by the foster parents to go forward, it cannot be denied that T.D and S.D. have displayed a great deal of interest in having a relationship with E.A.D., not to

mention a great deal of expense in pursuing their claims in court. Because of their obvious interest in a continuing relationship with E.A.D., when this matter proceeds to the hearing on the Petition for Agency Adoption, I would urge all parties involved to consider a continuing contact agreement pursuant to La.Ch.Code art. 1208(D) and La.Ch.Code art. 1269.1 et. seq.

Moreover, if the parties choose not to voluntarily enter into a continuing contact agreement, La.Ch.Code art. 1218(D) provides, "Parents, grandparents, siblings, or other relatives by blood, adoption, or affinity who have an established and significant relationship may be allowed continuing contact with an adopted child in accordance with Chapter 14-A of this Title."

I do not find any reference in the record to a hearing by the trial judge to determine whether the grandparents should be allowed continuing contact with E.A.D. following the final decree of adoption. Louisiana Children's Code Article 1208(D) states, "If not previously determined by the court in a separate hearing, the court shall also determine whether any proposed continuing contact agreement involving a child in the custody of the department is in the best interest of the child in accordance with Article 1269.5."

The trial judge, upon appropriate motion, may in his discretion conduct a hearing pursuant to La.Ch.Code art. 1208(D) and determine whether it is in E.A.D.'s best interest to allow continuing contact and visitation with the grandparents and his sibling following the adoption. See also La.Ch.Code art. 1269(2).

While visitation with the child may have initially been problematic as reflected in the DCFS and CASA case reports filed in evidence in the record, almost three years have elapsed since the child's removal from the mother's

custody and removal from the grandparents' home.  The trial judge may consider whether preservation of the relationship between the child and his maternal grandparents and sibling would be in the best interest of E.A.D.  If so, some form of grandparent and sibling visitation may be considered by the trial judge in his discretion.